CASE 64—PROSECUTION AGAINST HIRAM DENHAM FOR AN ASSAULT
WITH INTENT TO KILL.—JAN. 20.

# Denham v. Commonwealth.

APPEAL FROM LINCOLN CIRCUIT COURT—W. C. BELL, CIRCUIT JUDGE.

DEFENDANT CONVICTED AND APPEALS.  AFFIRMED.

CRIMINAL  LAW—VERDICT—GRAMMATICAL  DEFECTS—CORRECTION—
MODE—DISCHARGE OF JURY—ASSAULT—EVIDENCE—RES GESTAE—
TRAILING OF BLOODHOUNDS.

1. A verdict reading "We, the jury 'fin' the defendant guilty,
   fix his punishment three years in 'pen,' " and a corrected verdict,
   "We, the jury, find the defendant guilty and fix his punishment
   at three years in the State prison," were neither of them fatally
   defective, and a judgment rendered on either would have been
   good.

2. Where a verdict in a criminal case was not fatally defective, but
   was deficient in spelling and grammatical construction, it was not
   error for the court to exclude it from the record and require the
   jury to return a verdict correcting the defects.

3. Where a verdict is so inadequate in form or substance, or its
   language is so indefinite or ambiguous as to make its meaning
   uncertain, or where it is merely defective in spelling or grammati-
   cal construction, it may be corrected either in the presence of
   the court, and under its direction, or by the jury after returning
   to the jury room, or by the court in the presence of the jury and
   with their approval.

4. A recital in the bill of exceptions showing the return of a defective
   verdict, "and, the judge being shown the verdict, he 'thereupon'
   sent the jury back to the jury room," and they then returned
   a corrected verdict, shows that the jury was not discharged until
   after the return of the corrected verdict.

5. The act of the court in recalling the jury in a criminal case after
   discharging them, and directing them to retire to the jury room
   for the purpose of returning a verdict correcting defects in gram-
   matical construction and spelling in the original verdict, was not
   prejudicial to defendant where they were recalled before they had
   left the presence of the court.

6. In a prosecution for assault with intent to kill, evidence of a rob-

Denham v. Commonwealth.

bery committed at the time of the assault is admissible as part of the *res gestae* and also to show motive for the assault.

7. In a prosecution for assault with intent to kill, evidence of the trailing of defendant by bloodhounds which were shown to have been of good breeding, and to have been carefully trained in tracking men, and which had tracked and aided in the capture of many criminals, was admissible, although the pedigrees of the dogs were not asked about or stated with particularity.

C. C. WILLIAMS, ATTORNEY FOR APPELLANT.

1. We submit that where a defendant is being tried for assaulting another with intent to kill, it is error for the court to allow the attorney for the Commonwealth to ask the prosecuting witness whether any money was taken from him, for the reason that robbery being a separate offense it can not be considered by the jury in connection with the offense for which the defendant was being tried, and such evidence was, therefore, prejudicial to the defendant. But, in any event, if such evidence was admitted, the trial court should have cautioned the jury for what purpose it was competent.

2. We further claim that the court erred in admitting evidence of the use of bloodhounds on the supposed track of the defendant, where it is not shown that the dogs used were of pure blood, to which evidence the defendant at the time objected and excepted.

3. The jury, after deliberation, returned into court the following verdict: "We, the jury, fin the defendant guilty, fix his punishment at three years in pen." The jury was discharged and court adjourned; thereafter the jury was called back by the judge, and the case submitted to them for a proper verdict, whereupon the jury retired to the jury room and returned the following verdict: " We, the jury, find the defendant guilty and fix his punishment at three years in the 'State prison," to all of which the defendant objected and excepted. We contend that the first verdict was in fact no verdict at all, and that the court had no authority to recall the jury and require them to bring in a second verdict.

AUTHORITIES CITED.

Furnish v. Com., 14 Bush, 181; Martin v. State (Tex.), 35 S. W., 976; Thornley v. State (Tex.), 35 S. W., 981; Allen & Allen v. Com., 26 R., 807; Pedigo v. Com., 19 R., 1727; Nave v. Collier, 6 R., 602; Underhill on Crim. Ev., sec. 87; 28 Am. & Eng. Ency. of Law, 368; 11 Ohio, 472; 32 S. Car., 17; Criminal Briefs,

Denham v. Commonwealth.

N. B. HAYS, ATTORNEY GENERAL, AND C. H. MORRIS, ATTORNEYS FOR APPELLEE.

1. It is clearly shown in evidence that the dogs used in tracking the defendant were of pure blood and that the old dog had made up to that time sixty-three captures, and that both the dogs so used were well trained in tracking men, and, under the rule as applied to such evidence, it is competent as a circumstance which might tend to connect the accused with the commission of the crime, just as any other circumstance which might be allowed in testimony.

2. We submit that where a prosecuting witness was called from his house in the night time out to the front gate and knocked down it was competent, as part of the *res gestae*, to prove by him that on recovering from the effects of the blow he discovered that he had lost about forty dollars in money.

3. We submit that the errors in the original verdict were of no consequence whatever. Ordinary intelligence would lead a man to believe that when the jury used the word "fin" they intended to mean "find," and that the abbreviation "pen." is frequently used for the word "penitentiary."

### AUTHORITIES CITED.

Snapp v. Commonwealth, 82 Ky., 173; O'Brian v. Com., 89 Ky., 362; Franklin v. Com., 92 Ky., 612; Roberson on Cr. Law and Procedure, vol. 2, p. 1058; Burgen & Mehan v. Sears, &c., 24 R., 80; Bishop's New Cr. Procedure, vol. 1, sec. 1004; Am. & Eng. Ency. of Law, vol. 28, p. 365; Crockett v. Com., 100 Ky., 389; Taggart v. Com., 104 Ky., 301.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

On the night of October 20, 1902, one C. H. Vanarsdale, who resides in Lincoln county, on the Hustonville and Middlesburg pike, was called to his front gate, situated within thirty yards of his house, upon reaching which he found two men, one a tall man and the other of lesser height. When Vanarsdale got to the gate the tall man asked if he was Mr. Vanarsdale, and said, "G—— d——n you, I am going to kill you," at the same time raising his arm, and holding in his hand something that Vanarsdale took to be

a knife or pistol. Immediately following this demonstration, the shorter man struck Vanarsdale in the face, and knocked him down. The blow was evidently inflicted with brass knucks, or other deadly weapon, as it lacerated Vanarsdale's face, and rendered him unconscious for some time; but he managed to either walk or crawl to the house, and, after a time, informed his family of what had been done to him. When he met his assailants at the gate, he had $42 upon his person, but when he regained consciousness, he discovered that the money was all gone. James Cottrell and the appellant, Hiram Denham, were arrested for the crime committed upon Vanarsdale, and both were soon thereafter jointly indicted by the grand jury of Lincoln county for willfully and maliciously striking and wounding Vanarsdale with a deadly weapon with intent to kill him, but of which he did not die. Cottrell was first tried, convicted, and sent to the penitentiary, but for what length of time the record in this case does not indicate. After many continuances of the prosecution as to the appellant, Denham. he was finally brought to trial, which resulted in his conviction, and the fixing of his punishment by the jury at confinement in the penitentiary for three years. He has appealed from the judgment of conviction, and now asks its reversal. Numerous alleged errors upon the part of the lower court were set forth in the grounds filed in support of the motion made by appellant for a new trial, but only three of them are now relied on in the brief of appellant's counsel.

It is contended for appellant, first, that the verdict returned by the jury was so indefinite and defective as to render it insufficient to support the judgment; second, that after the verdict mentioned was returned and the jury discharged, the trial judge, being advised of the alleged defec-

Denham v. Commonwealth.

tive character of the verdict, improperly recalled the jury, and caused them to retire and return another and second verdict, equally as defective in form and substance as the first, which he received, and upon which the judgment appealed from was entered; third, that the court admitted upon the trial incompetent evidence, greatly to appellant's prejudice. The language of the first verdict was as follows: "We, the jury, fin the defendant guilty, fix his punishment three years in pen. S. E. Estes, Foreman." That of the second: "We, the jury, find the defendant guilty and fix his punishment at three years in the State prison. S. E. Estes, Foreman." While each verdict is awkwardly expressed, we do not think either so defective as to affect its validity. Obviously, any one of average intelligence and ordinary understanding would know at a glance that the word "fin" in the first verdict was intended for "find," and that the word "pen" is a mere abbreviation of the word "penitentiary," an institution provided by the State, in which offenders against its criminal laws are confined for punishment and correction. Nor would a mistake be made by one of common understanding as to the meaning of the words "State prison." They are frequently used as synonymous with the word "penitentiary," never as meaning a jail, which, as is well known, is a prison appertaining to a county or municipality, in which are confined for punishment persons convicted of misdemeanors committed in the county or municipality. We think a judgment entered upon either verdict would have been good, as neither was fatally defective. Correction, however, of their first verdict by the jury was authorized. Judicial pride in maintaining a presentable, as well as accurate, record of the proceedings in his court, induced the trial judge, doubtless, to exclude from that record such a deformed verdict as was the one first

returned by the jury; hence its correction was proper, though not necessary to its validity. If a verdict be so inadequate in form or substance, or its language so indefinite or ambiguous, as to make its meaning uncertain, the jury should be required to perfect it. This may be done by them in the presence of the court and under its direction, or after returning to the jury room, or it may be done by the court in the presence of the jury, and with their approval. Bishop's New Cr. Proc., vol. 1, section 1004. Where mistakes such as appear in the first verdict in this case occur, the necessary correction may be made by the jury or court in one of the several ways already indicated. Am. & Eng. Ency. of Law, vol. 28, p. 365. In the case at bar, the court, calling the attention of the jury to the defects of the first verdict, directed them to return to the jury room and correct it, which they did.

Counsel's contention that the jury were discharged after the return of the first verdict, and recalled by the court after such discharge, and then sent to their room to return a second or correct verdict, is not sustained by the record. Upon the contrary, we find that the jury were not discharged until after the return of the second verdict, as this statement in the bill of exceptions immediately following the first verdict will show: "And the judge being shown the verdict, he thereupon sent the jury back to the jury room," and they then returned the second verdict. But if the jury had been discharged as charged by counsel for appellant, even then as they had not left the presence of the court before being recalled and directed to retire to their room for the purpose of returning the second verdict, no injury could have resulted to appellant's rights. In Taggart v. Commonwealth, 104 Ky., 301, 20 R., 493, 46

S. W., 674, it appeared that the jury returned the follow-
ing verdict: "We, the jury, find the defendant Don Tag-
gart guilty and fix his punishment at confinement for seven
years in the punishment." The clerk, in reading the verdict,
substituted "penitentiary" for the word "punishment."
After the reading of the verdict, the jury was discharged,
but took their seats in the court room, save one, who en-
tered a water-closet connected with the court room. The
attention of the court was called to the mistake in the
verdict. The members of the jury were recalled, and the
court erased from the verdict the word "punishment," and
in lieu thereof wrote "penitentiary." The verdict was then
read to the jury, and the jury polled. Upon that state of
facts, this court said: "We perceive no error in this. The
context clearly shows that by the word 'punishment' was
meant 'penitentiary,' and the immediate correction could
not, in any conceivable way, have prejudiced the rights of
appellant."

It is insisted for appellant that, as he was charged with
and being tried for malicious shooting and wounding Van-
arsdale with a deadly weapon with intent to kill him, the
court erred in admitting evidence that Vanarsdale was
robbed of $42 when assaulted and knocked down in his
yard. The competency of such evidence has been repeatedly
recognized by this court. In Roberson's Cr. Law (2d Vol.)
p. 1058, it is said: "It is a general rule that in a prosecu-
tion it is not competent to show that defendant on an-
other occasion committed another and distinct crime, even
though it be similar to the one charged. There are excep-
tions to this rule. Thus, evidence of another and distinct
crime, if it is committed as part of the same transaction,
is admissible, and forms a part of the *res gestae.*" Snapp
v. Commonwealth, 82 Ky., 173, 6 R., 34. Clearly, the rob-

bery committed upon Vanarsdale was a part of the *res gestae.* The evidence in question was admissible upon another ground, viz., to show a motive for the assault upon Vanarsdale. "The intent, knowledge, or motive under which the defendant did the act charged against him, not generally admitting of other than circumstantial evidence, may often be aided in the proof by showing another crime, actual or attempted. Then it is permissible." Bishop's New Cr. Proc., vol. 1, sec. 1126; O'Brien v. Commonwealth, 115 Ky., 74 S. W., 666, 24 Ky. Law Rep., 2511; Bess v. Commonwealth, 116 Ky., 927, 77 S. W., 349, 25 Ky. Law Rep., 1091.

It is further insisted for appellant that the court should have excluded the evidence introduced to show the use of bloodhounds in the attempt to discover the assailants of Vanarsdale. It appears from the evidence that a telephone message was sent to John Mulligan, of Wilmore, Ky., on the night of the assault upon Vanarsdale, requesting the use of his bloodhounds to track the guilty parties. The request was complied with, and a pair of bloodhounds sent by Mulligan to Vanarsdale in charge of Keelin and Smith. They got to Vanarsdale's on the same night the assault was committed. The heads of the dogs were held up when they were taken from the wagon until the place of the assault was reached. They were then put to their work, and at once struck the trail, which they followed to the home of James Cottrell, in the neighborhood. Upon reaching and entering the house, they immediately went to Cottrell and appellant, who were there, smelled them, and did no further trailing. It also appears that care was taken by the family and friends of Vanarsdale to prevent persons about the premises after the assault upon Vanarsdale from going to or about the place where it was committed, in order that the bloodhounds might not be confused or obstruct-

ed in following the tracks of the assailants. It also appears from the testimony of Mulligan, the owner of the dogs, that one of them was two years, the other sixteen months, old; that both are bloodhounds of good breeding, the sire of the older one being a pure bloodhound, and the grandsire an English bloodhound trained in tracking men. It was further testified by their owner that both dogs had been carefully trained in tracking men, and that the older dog had tracked and aided in the capture of sixty-three criminals, in several of which the younger dog had assisted. While the pedigrees of the dogs were not asked about, nor stated with particularity, we incline to the opinion that the testimony as a whole shows that they substantially possessed the breeding, qualities and training required by the rule announced by this court in Pedigo v. Commonwealth, 103 Ky., 41, 19 R., 1723, 44 S. W., 143, 42 L. R. A., 432, 82 Am. St. Rep., 566; therefore the testimony as to the trailing done by them in the capture of appellant and Cottrell was properly allowed to go to the jury for what it was worth as one of the circumstances tending to connect the appellant with the crime for which he was convicted. The testimony in question was, as we think, sustained, and the guilt of appellant, as thereby indicated, confirmed, by Vanarsdale's identification of him by his size and voice, the finding by the arresting officer of money concealed in his drawers' leg, the confession of his accomplice, and other circumstances of equal weight shown by the record.

Though no objection is urged to the instructions in the brief of counsel, we have nevertheless carefully read them, and find that they presented fully and fairly to the jury all the law of the case.

The record presenting no cause for reversal, the judgment is affirmed.