**Robert M. GROOMS, Appellant (Plaintiff Below),**

v.

**Steve FERVIDA, Frederick Call, Sidney Fish, and Dick Bowman, Appellees (Defendants Below).**

**No. PS 420.**

Court of Appeals of Indiana, Third District.

Nov. 5, 1979.

---

Robert M. Grooms, pro se.

John D. Ulmer, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for appellees Steve Fervida, Frederick Call and Dick Bowman.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee Sidney Fish.

HOFFMAN, Judge.

Plaintiff-appellant Robert Grooms brought an action for false imprisonment against defendants-appellees Steve Fervida, Frederick Call, Sidney Fish and Dick Bowman. The jury returned a verdict adverse to Grooms and he appeals.

Viewing the evidence in a light most favorable to the appellees, it appears that on Monday, December 2, 1974, Grooms was placed under a warrantless arrest by two police officers not parties to this action. At approximately 5:30 P.M. that day, Detectives Fervida and Fish took custody of Grooms and escorted him from the Elkhart County Police Department substation to the Elkhart County jail. There, Call was instructed by Fervida to book Grooms for

preliminary investigation of armed robbery. From December 2nd through December 11th, Grooms was confined in the county jail without any criminal charges filed against him or a warrant issued for his arrest. During this period, there were two superior court judges, a circuit court judge, three city court judges and several justices of the peace available in Elkhart County. The record indicates that the normal practice in the county was to take all persons arrested for felonies to the superior courts on Thursday or to the circuit court on Friday.

Around 6:00 P.M. on December 4th, attorney Jerry Virgil discussed his representation of Grooms with the county prosecutor and they agreed to the following arrangement: Grooms would give written statements regarding an armed robbery and unrelated homicide then being investigated. A polygraph test would be administered to Grooms about. the homicide statement. If the test results absolved Grooms of the homicide, he would be released from custody and no criminal charges would be filed against him. After consulting with Virgil on December 5th, Grooms assented to the arrangement. The results of the test were received on December 10th and revealed that Grooms had failed the polygraph. On December 11th, Grooms was indicted for first-degree murder and a warrant was issued for his arrest. He was found guilty of first-degree murder on November 7, 1975, and his conviction was affirmed by the Indiana Supreme Court in *Grooms v. State* (1978), Ind., 379 N.E.2d 458.

Grooms assigns as error the following issues:

(1) whether the trial court erred in dismissing Bowman as a defendant in the action;

(2) whether the trial court erred in denying Grooms' motion for partial summary judgment;

(3) whether the trial court erred in allowing defendants to impeach their own witness under Ind.Rules of Procedure, Trial Rule 43(B):

(4) whether the trial court erred in refusing to give Grooms' tendered Final Instruction No. 2; and

(5) whether the verdict of the jury is contrary to law.

Grooms maintains the trial court erred in dismissing this action against Bowman who was a major in the Elkhart County Police Department and the superior of defendants Fervida and Call. The original complaint did not name Bowman as a defendant. However, his amended complaint filed on January 21, 1977 alleged that Bowman was liable for the acts of false imprisonment which occurred between December 2 and December 11, 1974. The trial court dismissed the amended complaint against Bowman for failure to institute the action within the two-year statute of limitations provided for in IC 1971, 34-1-2-2 (Burns Code Ed.). That statute states in part:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.

"First. For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two [2] years: . . .

"Second. All actions against a sheriff, or other public officer, or against such officer and his sureties on a public bond, growing out of a liability incurred by doing an act in an official capacity, or by the omission of an official duty, within five [5] years; but an action may be brought against the officer or his legal representatives, for money collected in an official capacity, and not paid over, at any time within six [6] years."

■ Grooms asserts that since the amended complaint specified that Bowman was being sued as a public officer and for acts growing out of his official capacity as a deputy sheriff, his cause of action ought to be governed by the second provision in IC 1971, 34-1-2-2 prescribing a five-year statute of limitations. He reasons that since the complained of acts and omissions occurred in December 1974, the statute of limitations would not expire until December 1979.

The solution to this problem can be found by looking to the basic nature of the alleged violation of Grooms' right. So viewed it is evident that the gravamen of the amended complaint is a claim of wrongful imposition of control over Grooms' freedom of movement and therefore comes within the framework of the fundamental tort of false imprisonment. Clearly the essential nature of the wrong of false imprisonment is an injury to the person. For this reason, the trial court was correct in its analysis that the two-year statute of limitations applied.

■ In response to the argument that the five-year statute of limitations was applicable, the only facts alleged in the amended complaint to connect Bowman with the imprisonment were his capacity as supervising officer of defendants Fervida and Call and his responsibility for the daily operation of the county jail. No statute has been cited nor have any been found which would impose an official duty upon Bowman to inquire into the legality of the detention of every person incarcerated there.

■ In an effort to obviate the conclusion that the statute of limitations had expired against Bowman, Grooms advances the argument that the statute was tolled because he was under a legal disability when his cause of action accrued insofar as he was detained in the county jail when the false imprisonment terminated. Indiana law provides for a personal disability making imprisonment of a person *in the state's prison* a ground for suspending a statute of limitations that would otherwise bar a cause of action in his favor. IC 1971, 34–1–2–5 (Burns Code Ed.); IC 1971, 34–1–67–1 (Burns Code Ed.). Nevertheless, it is generally held that exceptions to statutes of limitations are to be strictly construed. 77 A.L.R.3d 735 (1977).

Grooms' proposition that he was under a legal disability presupposes that "county jail" and "state prison" are synonymous expressions. This assumption, however, is ill-founded. While the generic nature of the word "prison" and its allied terms may have led certain writers to use it interchangeably with the word "jail", see *Hall v. State* (1928), 199 Ind. 592, 159 N.E. 420; *Jones v. State* (1978), Ind., 377 N.E.2d 1349, there is a clear distinction between the state prison and a county jail.

The term "state prison" has generally signified the penitentiary maintained by the state for the confinement of prisoners convicted of crimes of a certain degree and of a higher legal character than those for which a person is incarcerated in the county jail. *Martin v. Martin* (1866), 47 N.H. 52; *State v. Johnson* (1949), 96 N.H. 4, 69 A.2d 515; *Denham v. Commonwealth* (1905), 119 Ky. 508, 84 S.W. 538. Until the Legislature abolished the distinctions for sentencing purposes among the Indiana State Prison, the Indiana Reformatory, the Indiana State Farm and the Indiana Boys' School in 1978, the facility known as the Indiana State Prison was used exclusively "for the incarceration of male persons convicted by any of the courts of this state of treason or murder in the first or second degree, of those persons now confined therein, except as hereinafter provided and of all persons convicted by any of the courts of this state of any felony who at the time of such conviction may be thirty [30] years of age or over and of all persons who may be transferred thereto under the provisions of this act." IC 1971, 11–2–3–2 (Burns Code Ed.).[1]

The logic of a tolling provision for those persons incarcerated in the Indiana State Prison or another maximum security facility for criminals becomes apparent considering that the restraints imposed on one sentenced to the Indiana State Prison are substantially greater than they are for one incarcerated in a county jail. The trial court was correct in concluding that the terms "state prison" and "county jail" are not synonymous expressions. Consistent with what has been stated herein, the trial court properly granted Bowman's motion to dismiss.

Grooms also claims the trial court erred in denying his motion for partial summary

---

1. This statute was repealed by § 1118 of Acts 1978, P.L. 2.

judgment. Since it was uncontroverted that he was placed under a warrantless arrest and held in excess of 48 hours without the benefit of a judicial hearing on the legality of his restraint, Grooms submits summary judgment should have been rendered on the issue of his false imprisonment.

■ A motion for summary judgment may be sustained if the pleadings and other matters filed with the court disclose there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). In determining whether a genuine issue of material fact exists, the facts established by the opponent must be accepted as true and all doubts must be resolved against the proponent of the motion. *Crase v. Highland Village Value Plus Pharmacy* (1978), Ind.App., 374 N.E.2d 58.

■ The essence of defendants' argument was that Grooms waived his right to a prompt hearing by agreeing to await the results of the polygraph examination. Taking this as true for purposes of the motion, there was indeed a question of fact presented regarding the cause of the delay in taking Grooms before a magistrate. Summary judgment directed to this point was properly denied.

■ Grooms contends the trial court erred in allowing defendants to impeach their own witness since such impeachment violated the motion in limine order and because there was no showing of manifest surprise or that the witness was indispensable. Prior to the trial, the court granted Grooms' motion in limine prohibiting defense counsel from inquiring whether Grooms had been convicted of first-degree murder or any other felonies without first approaching the bench and informing plaintiff's counsel. At trial defendants called Grooms as their witness. The pertinent exchange between defense counsel and Grooms reads as follows:

"Question: Would you state your name please.

"Answer: Robert Grooms

"Question: Before we go into questioning on the case today, isn't it a fact that you were convicted of the crime of first degree murder in November, 1975?

"Answer: Yes it is.

"Question: Were you also convicted of theft in the year 1962?

"Ms. Stam: Objection, Your Honor, if this is intended to be impeachment; if so, he called him as his own witness and he cannot impeach his own witness.

"Mr. Ulmer: Your Honor, I called him as an adverse witness and under the new Indiana Trial Rules, I can do that.

"The Court: I'll overrule the objection on the basis of calling him under that particular rule, you may proceed.

"Question: Mr. Grooms, were you convicted of theft in 1962, or was it grand larceny.

"Answer: Grand Larceny, yes."

■ It is apparent that Grooms failed to preserve any alleged error pertaining to violation of the motion in limine order insofar as his objection was predicated on impeachment grounds. Where error is assigned to the admission of evidence, the grounds for the objection presented on appeal must be the same as that urged at trial. *Gradison v. State et al.* (1973), 260 Ind. 688, 300 N.E.2d 67.

■ Moreover, Ind.Rules of Procedure, Trial Rule 43(B) sanctions defense counsel's method of impeaching Grooms. That rule provides:

"Scope of the examination and cross-examination. A party may interrogate any unwilling or hostile witness by leading questions. *A party may call an adverse party* or an officer, director, managing agent or executive officer, or other person duly authorized and consenting to testify on its behalf, of a public or private corporation or of a partnership or association which is an adverse party, *and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party,* and the witness thus called may be

contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief." (Emphasis added.)

The questions regarding Grooms' convictions for murder and theft could be considered as affecting his credibility as a witness. IC 1971, 34–1–14–14 (Burns Code Ed.). See *Barnard v. Wabash R. Co.* (8th Cir. 1953), 208 F.2d 489 where in a false imprisonment case defense counsel was permitted to impeach a witness regarding his confession for an unrelated robbery. There was no error in the trial court's judgment here.

■ Grooms next argues the trial court erred in refusing to give his tendered Final Instruction No. 2 which reads as follows:

"You are instructed that there was at all relevant times a statute in full force and effect in Indiana which in pertinent part reads as follows:

Whenever any arrest has been made by any member of (a) police force, it shall be the duty of the officer . . . to bring the person arrested before the . . . court having jurisdiction of the offense, to be dealth (sic) with according to law. If the arrest is made during the hours when such court is not in session, or if the judge is not holding court, such offender shall be detained . . . until there shall be an opportunity for such hearing at the earliest practicable time, or until he shall have been given bond for his appearance. But no person shall be so detained longer than twenty-four hours without such examination, except where Sunday intervenes, in which case no person shall be detained longer than forty-eight hours.

"If you find, from a preponderance of the evidence that the defendants or any of them violated this section, you may consider this as evidence that the defendants or any of them falsely imprisoned the plaintiff.

"I.C. 18–1–11–8"

IC 1971, 18–1–11–8 (Burns Code Ed.) applies only to city and town police officers. In the case at bar, this statute was inapposite because defendants Fervida, Call and Bowman were Elkhart County Sheriff's Department officers while defendant Fish was a member of the Indiana State Police.

Thus, the trial court committed no error in refusing an instruction unsupported by any evidence. *Lamb v. York* (1969), 252 Ind. 252, 247 N.E.2d 197.

■ Alternatively, Grooms insists that applying the maximum appearance time limits in IC 1971, 18–1–11–8 to city and town police officers only violates equal protection of the law since there is no difference in the situation of one arrested by county or state police as opposed to city or town police that would permit distinct maximum periods. The fact that the state or county police are not bound by the strictures of IC 1971, 18–1–11–8 is of no consequence here. As long as a person arrested by state or county police is brought before a neutral and detached magistrate without unreasonable delay, he cannot be heard to complain. To construe the statute as including all police officers would be an act of judicial legislation.

Lastly, Grooms urges that the verdict of the jury was contrary to law. He suggests that the nine-day delay in presenting him before a magistrate was unreasonable as a matter of law.

■ False imprisonment consists of an unlawful restraint upon one's freedom of locomotion or the deprivation of liberty of another without his consent. *Brickman v. Robertson Bros. Dept. Store etc.* (1964), 136 Ind.App. 467, 202 N.E.2d 583. If a person arrested is detained or held by an officer for a longer period of time than is required under the circumstances without a warrant or other authority, the arrestee will have a cause of action for false imprisonment against the officer and all others by whom he has been unlawfully detained or held. *Harness v. Steele* (1902), 159 Ind. 286, 64 N.E. 875; *Matovina et al. v. Hult* (1955), 125 Ind.App. 236, 123 N.E.2d 893. More-

over, proof of the fact of imprisonment is sufficient to raise the presumption that such imprisonment was illegal; the burden of establishing justification for the imprisonment is on the defendants. *Black v. Marsh* (1903), 31 Ind.App. 53, 67 N.E. 201.

The defendants in the instant case grounded their justification defense on Grooms' waiver. While Grooms' attorney averred he did not agree that Grooms could be held without an appearance before a magistrate, the evidence and reasonable inferences therefrom favoring the defendants indicates otherwise. The record reveals that attorney Virgil worked out an arrangement with the prosecutor on December 4, 1974, whereby Grooms would be freed on the murder charge if he passed the polygraph. After consulting with Virgil, Grooms agreed to this arrangement. The test results were received on December 10th and showed that Grooms had failed the polygraph. He was indicted for the homicide on December 11th and taken before a magistrate the following day.

The conduct of an arrestee may amount to a waiver of the right to complain of the failure to promptly take him before a magistrate or court. 98 A.L.R.2d 966 (1964). Thus in an action for false imprisonment, a plaintiff cannot take advantage of delays due to his own conduct and that includes the conduct of those who represent him. *Janus v. United States* (9th Cir., 1930), 38 F.2d 431. If the defendants had taken Grooms before a magistrate prior to receipt of the polygraph results, it would have violated the terms of the agreement that Virgil negotiated and Grooms agreed to. In such an instance, the several defendants might have been subjected to false arrest or false imprisonment charges if Grooms had passed the polygraph. Although the evidence was in conflict, the jury was nonetheless entitled to determine that Grooms, represented by competent counsel, intelligently waived his right to appear before a magistrate and that any delay was attributable to himself. The evidence does not lead unerringly to a conclusion opposite that reached by the jury.

No reversible error having been shown, the judgment must be affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. Based on my examination of the record tendered to this Court on appeal,[1] the jury's verdict was clearly contrary to the evidence. In short, there simply is no evidence to justify Grooms' nine-day warrantless incarceration at the hands of Police Officers Fervida, Call, and Fish. In concluding that the Police Officers sustained *their burden* to establish a justification for failing to take Grooms before a magistrate, the majority has mistakenly relied on an inaccurate portrayal of the facts surrounding Grooms' incarceration.

The record reveals the following sequence of events with respect to Grooms' claim that he was falsely imprisoned by the various members of the Elkhart County Police Department in 1974:

(1) *December 2, 8:00 P.M.* : Grooms placed under warrantless arrest and "booked" for preliminary investigation of armed robbery; Grooms confined at Elkhart County Security Building.

(2) *December 4, 6:00 P.M.* : Attorney Virgil discusses his representation of Grooms with the Prosecuting Attorney; the two agree that "Grooms would be given a polygraph examination and if the polygraph examination

1. Due to Grooms' present incarceration at the Indiana State Prison, he was unable to afford a transcript for purposes of bringing this appeal. Pursuant to Ind.Rules of Procedure, Appellate Rule 7.2(A)(3)(c), Grooms submitted a "Statement of the Evidence" to the trial court in lieu of the unavailable transcript. Fervida, Call, and Fish subsequently tendered additions and amendments to Grooms' statement. The trial court certified the statement, together with the additions and amendments thereto, as a "true and correct" account of the evidence presented in the trial court.

absolved Mr. Grooms from the murder from [sic] which he was being investigated, he would not be charged with murder and there would be no charges placed against him concerning an armed robbery for which he was being investigated."[2]

(3) *December 5, 2:00 P.M.*: Attorney Virgil again discussed the above arrangement with the Prosecuting Attorney.

(4) *December 5, 2:00 A.M.*: Attorney Virgil conversed with Grooms for the first and only time during the period in question. Grooms agreed to give a statement on the armed robbery and murder under investigation—and to take a polygraph exam regarding his statement.

(5) *December 5, Afternoon hours*: Grooms transported to Chicago, where he underwent Polygraph exam; Grooms returned to confinement at Elkhart Security Center.

(6) *December 10*: Polygraph results are "negative."

(7) *December 11*: Grooms arraigned on first-degree murder charge.

The record also reveals that on December 2, 3, and 4, Officers Fish and Fervida questioned Grooms regarding his involvement in the two offenses. While the evidence indicates that the parties disagreed whether the two officers had advised Grooms of his *"Miranda"* rights prior to each interrogation, it is uncontroverted that neither Fish nor Fervida (nor any other person) ever informed Grooms of his right to be taken before a magistrate. In addition, it is undisputed that Attorney Virgil did not agree, either orally or in writing, that his client Grooms could be restrained without appearing before a magistrate.

The majority's conclusion that the jury was "entitled to determine that Grooms, represented by competent counsel, intelligently waived his right to appear before a magistrate . . ." is apparently based on Grooms' consent to take the polygraph examination. The record reveals only that Grooms agreed to take the examination upon the condition that he would not be charged with murder or armed robbery if the results supported his statement denying his involvement; *there is absolutely no evidence to indicate that Grooms agreed to remain incarcerated or to forego his right to appear before a magistrate pending the outcome of the exam.*[3] The evidence does not even support an inference that Grooms "intelligently waived" his right to appear before a magistrate.

Furthermore, while I would reject the contention that attorney Virgil had the capacity to waive his client's right to appear before a magistrate, it would be implausible to suggest that Virgil's conversations with the Prosecuting Attorney could serve that purpose here. At the time those conversations transpired, Grooms and Virgil had yet to make their initial contact regarding Grooms' incarceration and the pending investigations. Those discussions are irrelevant to our consideration here—Virgil could not decide for Grooms what he had not discussed with Grooms.[4]

I am unable to find a scintilla of evidence to support the jury's conclusion that the Elkhart County Police Officers were justified in imprisoning Grooms for nine days without a warrant and without taking him before a magistrate. At the same time, I am unwilling to ignore the constitutional

2. The language quoted is drawn from defendants-appellees "Objections and Amendments to Plaintiff's Statement of the Evidence and Proceedings." *See* fn. 1, *supra.*

3. The majority characterizes the gist of the arrangement as "Grooms would be freed on the murder charge if he passed the polygraph." No charge had been filed. It is more accurate to state that "Grooms would be freed from the murder investigation."

4. We do not imply that Virgil himself has suggested that he waived Grooms' right to appear before a magistrate. In an affidavit in the record, he expressly denies so. Our language is directed at the majority's reliance on the conversations between Virgil and the prosecutor.

ramifications of the police practices involved here.

The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution guarantee to the citizens of this state the right to be "secure in their persons" against unreasonable seizures by their governments. These constitutional provisions, of course, have never been interpreted to preclude the use of the warrantless arrest. *See, e. g., Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; *Hadley v. State* (1968), 251 Ind. 24, 238 N.E.2d 888, *cert. denied*, 394 U.S. 1012, 89 S.Ct. 1629, 23 L.Ed.2d 39 (1969). The constitutional provisions have been construed, however, to require that once a person's liberty is deprived through the vehicle of the warrantless arrest, he or she must be taken—without unnecessary delay—before a neutral and detached magistrate in order to determine whether probable cause for the deprivation of liberty exists. *Gerstein v. Pugh* (1975), 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54; *Dommer v. Hatcher* (N.D.Ind.1977), 427 F.Supp. 1040; *Williams v. State* (1976), 264 Ind. 664, 348 N.E.2d 623. The rationale for the rule was explained by the unanimous Court in *Gerstein* :

> "Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32–91 (1965); L. Katz, Justice Is the Crime 51–62 (1972)."

\*　　\*　　\*　　\*　　\*　　\*

> "When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."

420 U.S. at 114, 95 S.Ct. at 863.

Heretofore, the courts of this State have exhibited an appreciation for the significance of the constitutional requirement that a preliminary hearing follow posthaste to a warrantless arrest. *Williams v. State, supra* ; *Harness v. Steele* (1902), 159 Ind. 286, 64 N.E. 875; *Matovina v. Hult* (1955), 125 Ind.App. 236, 123 N.E.2d 893. *See also, Dommer v. Hatcher, supra.* Our courts have held that a warrantless arrest and incarceration without a preliminary hearing shortly thereafter cannot be justified on the basis that the police needed additional time to investigate the case and procure evidence against the accused. *Harness v. Steele, supra*, at 879; *Matovina v. Hult, supra*, at 897. *Accord, Dommer v. Hatcher, supra*, at 1045. Our Supreme Court has held that a warrantless incarceration without a judicial determination of probable cause for a period of sixty-eight hours clearly violated the suspect's Fourth Amendment rights. *Williams v. State, supra*, at 627; *See also Dommer v. Hatcher, supra*, at 1045 (A warrantless arrest and incarceration for a period of twenty-four hours without a hearing violated suspects' rights under United States and Indiana constitutions.). In addition, our legislature has sought to protect individual liberty against governmental intrusion by enacting various statutes designed to insure that a judicial determination of probable cause is afforded those citizens whose freedom is jeopardized. *See* IC 1971, 35–1–7–1 § 9–701 (Burns Code Ed.); IC 1971, 35–1–8–1 § 9–704 (Burns Code Ed.); IC 1971, 35–4–1–1 § 9–704a (Burns Code Ed.); IC 1971, 35–3.1–1–1(d) § 9–903(d) (Burns Code Ed.); IC 1971, 9–4–1–130 § 47–2307 (Burns Code Ed.); IC 1971, 18–1–11–8 § 48–6112 (Burns Code Ed.); IC 1971, 18–4–12–16 § 48–9416 (Burns Code Ed.).

Our decision here today flies in the face of both the letter and spirit of these constitutional, statutory, and judicial authorities. The majority holds that a nine-day warrantless incarceration for the purpose of further investigating the arrestee's role in the case—without a judicial determination of probable cause—is permissible. In so holding, the majority indirectly sanctions that very type of governmental conduct which prompted our forefathers to their creation of the Bill of Rights.

I do not dispute that a suspect may waive his or her right to be promptly taken before a magistrate subsequent to a warrantless arrest. Those instances, however, are rare.[5] Here, Police Officers Fervida, Call, and Fish wholly failed to sustain their burden of proof to establish their claim that Grooms waived his constitutional right to a prompt judicial determination of probable cause.

I would reverse the judgment of the trial court, enter judgment for Grooms, and remand the cause to the trial court with instructions to grant a new trial on the issue of damages.

---

5. *See* 98 A.L.R.2d 966 (1964), as relied upon by the majority.