Charity Marie LIVINGSTON,
Plaintiff-Appellant,

v.

CONSOLIDATED CITY OF INDIANAPOLIS and State of Indiana,
Defendants-Appellees.

No. 1-278A33.

Court of Appeals of Indiana,
First District.

Dec. 27, 1979.

John T. Manning, Indianapolis, for plaintiff-appellant.

Sheila S. Suess, Corp. Counsel, Richard L. Darst, Asst. Corp. Counsel, City-County Legal Div., Indianapolis, for Consolidated City of Indianapolis.

Theodore L. Sendak, Atty. Gen. of Indiana, Mark Allen Mertz, Deputy Atty. Gen., Indianapolis, for State of Indiana.

NEAL, Judge.

Charity Marie Livingston was stopped in her automobile by Indianapolis police officers on January 18, 1975. As a result of circumstances surrounding this stop, the police charged Livingston with disorderly conduct and with being in violation of an automobile anti-noise ordinance. The charges were filed by police on January 18, 1975. On August 11, 1975, Livingston was acquitted on both charges. She then proceeded to file suit against the Consolidated City of Indianapolis (City) and the State of Indiana (State), on January 18, 1977, alleging false arrest, false imprisonment, assault and battery, and malicious prosecution.

The State and the City filed motions to dismiss pursuant to Ind.Rules of Procedure, Trial Rule 12(B)(1) and 12(B)(6). The trial court granted their motions, and the case was dismissed in favor of both defendants. Thereafter, Livingston filed a timely motion to correct errors and a timely praecipe. This appeal results.

Affirmed.

In her motion to correct errors, the appellant raises the following issues:

1) Whether the judgment of the trial court was contrary to law?

2) Whether the trial court erred when it held that the Indiana Tort Claims Act excluded from liability the State of Indiana and the Consolidated City of Indianapolis?

This court's disposal of the case at bar combines both allegations of error.

## FALSE ARREST, FALSE IMPRISONMENT, ASSAULT AND BATTERY

■ Livingston's causes of action for false arrest, false imprisonment, and assault and battery against the City and the State accrued on January 18, 1975. Each cause is a claim in tort. Furthermore, the claims arose from the acts of Indianapolis policemen. Policemen are public employees, as they act on behalf of a governmental entity. Ind.Code 34-4-16.5-2 (Supp.1979). Therefore, the causes of action filed by Livingston come within the Indiana Tort Claims Act. Ind.Code 34-4-16.5-7 et seq.

■ Ind.Code 34-4-16.5-7 provides that a claim is barred against a political subdivision unless notice of the claim is filed with the governing body of that political subdivision within 180 days after the loss occurs. Gonser v. Board of Commissioners, (1978) Ind.App., 378 N.E.2d 425. Ind.Code 34-4-16.5-6 states that a claim must be filed with the State within 180 days. Livingston's claims for false arrest, false imprisonment, and assault and battery accrued on January 18, 1975, the day Livingston was arrested, charged, and released from custody. See Matovina v. Hult, (1955) 125 Ind. App. 236, 123 N.E.2d 893. Livingston did not serve written notice on the City or the State until November 22, 1975, far past the 180-day deadline requirement for notice pursuant to Ind.Code 34-4-16.5-6 and 34-4-16.5-7. Therefore, Livingston has forfeited her right to bring her actions for

false arrest, false imprisonment, and assault and battery against either the State or the City.

## MALICIOUS PROSECUTION

Livingston's claim for malicious prosecution did not accrue until judgment was entered for her on the charges of disorderly conduct and violation of the anti-noise ordinance on August 11, 1975. Therefore the notice given by Livingston to the City and the State on November 22, 1975, was timely and preserved her cause of action for malicious prosecution.

The trial court sustained the motion to dismiss against all defendants on the action for malicious prosecution, and assigned as his reason therefor the immunity granted under the Indiana Tort Claims Act. Ind. Code 34–4–16.5–3.

The relevant portions of Ind.Code 34–4–16.5–3 dealing with immunity are as follows:

> "A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> \*   \*   \*   \*   \*   \*
>
> (5) the initiation of a judicial or administrative proceeding."

The question to be decided, therefore, involves the interpretation of the meaning of the phrase "initiation of a judicial . . . proceeding."

Judicial interpretation of statutory language is warranted where the meaning is unclear or ambiguous. *Hilligoss v. LaDow*, (1977) Ind.App., 368 N.E.2d 1365. To interpret a statute the court must search for the legislative intent. *State ex rel. Bynum v. LaPorte Superior Court*, (1973) 259 Ind. 647, 291 N.E.2d 355. Further, to ascertain the intent of the legislature, we must look at the whole of the act, to the law existing before, to the changes made, and the apparent motive for making them. *State ex rel. Rogers v. Davis*, (1952) 230 Ind. 479, 104 N.E.2d 382. We must construe the statute in accordance with the plain meaning, and we cannot apply a construction which is not in accordance with

the clear and express purpose of the statute. *St. Germain v. State*, (1977) Ind., 369 N.E.2d 931. Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having peculiar and appropriate meanings in law shall be understood according to their technical import. Ind.Code 1–1–4–1 (Supp.1979).

To determine the meaning of the phrase "initiation of a judicial . . . proceeding," we therefore must examine the state of the law relative to malicious prosecution and immunity as it existed prior to the enactment of the Tort Claims Act, and the judicially defined terms and words as are used in that act.

The elements of the action for malicious prosecution have been held by the Indiana courts to consist of the following: (1) the defendant instituted or caused to be instituted the prosecution, (2) he acted without probable cause, (3) he acted maliciously in doing so, and (4) the prosecution terminated in plaintiff's favor. *Johnson v. Brady*, (1915) 60 Ind.App. 556, 109 N.E. 230; *Boyd v. Hodson*, (1947) 117 Ind.App. 296, 72 N.E.2d 46. Restatement of Torts 2nd, Sec. 653.

The term "judicial proceeding" has been judicially defined as follows:

> "An action for a malicious prosecution can only be supported for the malicious prosecution of some legal proceeding, before some judicial officer or tribunal. If the proceedings complained of are extrajudicial, the remedy is trespass, and not an action on the case for a malicious prosecution." *Turpin v. Remy*, (1883) 3 Blackford 239, 245; *See also Batten v. McCarty*, (1927) 86 Ind.App. 462, 158 N.E. 583; Prosser on Torts, 4th Ed., page 834 *et seq.*

> " 'Judicial proceeding means any proceeding for the purpose of obtaining such remedy as the law allows.' . . . When a regularly constituted court of justice is clothed with authority to hear and determine a question of fact or a mixed question of law and fact, upon evidence, written or oral, to be produced

before such court, and thereupon to render a decision affecting the material rights or interests of one or more persons or bodies corporate, *such proceeding by the court must be regarded as judicial,* and the decision by the court may properly be denominated a judgment." *Treloar v. Harris,* (1917) 66 Ind.App. 59, 68, 117 N.E. 975, 978. (Emphasis added.)

The phrase "initiation of a judicial proceeding" has been defined as follows:

"Criminal *proceedings* are *initiated* by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused. Thus one who, personally or by a third person for whose conduct he is responsible under the law of agency, presents to a magistrate a sworn charge upon which a warrant of arrest is issued, *initiates* the criminal proceedings of which the issuance of the warrant is the institution." Restatement of Torts 2nd, Sec. 653, Comment c. (Emphasis added.)

■ A person who procures, instigates, causes a prosecution to be commenced, or participates voluntarily in the malicious prosecution, and it is carried out with his countenance and approbation, can be held liable for malicious prosecution. *Johnson, supra; Boyd, supra*; Restatement of Torts 2nd, Sec. 653, Comment d.

In *Campbell v. State,* (1972) 259 Ind. 55, 284 N.E.2d 733, the Supreme Court of Indiana, in abolishing governmental immunity, said at page 62, 284 N.E.2d at page 737:

"We do not mean to say by this opinion that all governmental units can be held liable for any and all acts or omissions which might cause damage to persons."

The court at page 61, 284 N.E.2d at page 736, in the same opinion, in meeting the arguments of the State, said

"The arguments which the state presents are questions which properly belong to the legislature in facing and solving the problems of liability."

The Tort Claims Act followed the abolition of sovereign immunity of the State and political subdivisions. The act was a legislative response to the *Campbell* decision. The clear intention of the act was to set up a uniform body of law to govern the prosecution of tort claims against the State and other governmental entities. *Gonser, supra.*

It is clear that neither *Campbell, supra,* nor the Tort Claims Act intended to abolish all governmental immunity. We note that Ind.Code 34–4–16.5–3 contains 14 situations wherein immunity was extended to the State and other governmental entities. Subsection 5, under discussion, is one of them. It is clear, when compared to the prior law of malicious prosecution and the terminology used therein, and the previously judicially-defined words and terms which the legislature used, that the legislature fully intended to extend immunity to the State of Indiana and other political subdivisions and their police officers in actions for malicious prosecution.

This is more evident when Subsection 7 is examined. Subsection 7 provides immunity for "the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, *unless the act of enforcement constitutes false arrest or false imprisonment.*" (Emphasis added.) A logical distinction exists between the two subsections. In Subsection 7, acts committed upon the *sole* discretion of officers, that is false arrest and false imprisonment, are not immune. However in malicious prosecution, which is immune under Subsection 5, an officer may not file a criminal proceeding. Before a criminal proceeding can be filed, the prosecuting attorney must approve the information, Ind.Code 35–3.1–1–2 (Supp.1979), and an arrest warrant cannot be issued until probable cause has been determined by a judge, Ind.Code 35–1–6–2 (Supp.1979). Safeguards are thus provided in the latter situation.

Persuasive policy arguments exist in support of a rule granting immunity to police officers in actions for malicious prosecution. The Supreme Court of California, in a case involving police officer immunity, addressed itself to this point in *White v. Towers,* (1951) 37 Cal.2d 727, 235 P.2d 209, 211:

"At the outset, we are faced with an apparent conflict between the public policy of protecting individual citizens from oppressive official action, and the equally well established policy of promoting the fearless and effective administration of the law for the whole people by protecting public officers from vindictive and retaliatory damage suits. . . .

When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm. 'Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it into execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution.' [Citation omitted.] . . . 'The public welfare requires that this choice (whether or not to institute proceedings) shall be free of all fear of personal liability. To assure this freedom of action it is deemed best to make that assurance positive and definite by securing him against even actions based upon a malicious abuse of his official power.' [Citation omitted.]"

See also *Foster v. Pearcy*, (1979) Ind., 387 N.E.2d 446, as relating to immunity of prosecuting attorneys.

■ We are of the opinion that the policy expressed in *Foster, supra*, was the policy of the legislature when it enacted the Tort Claims Act. We hold, therefore, that in accordance with the plain wording of Ind. Code 34-4-16.5-3, Subsection 5, immunity is granted to the State and municipal subdivisions and police officers in actions for malicious prosecution. We therefore affirm the judgment of the trial court.

Affirmed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.