**Jon M. WOODS, et al., Plaintiffs,**

v.

**CITY OF MICHIGAN CITY, INDIANA, et al., Defendants.**

No. S86–650.

United States District Court, N.D. Indiana, South Bend Division.

April 14, 1988.

---

Hugo E. Martz, Valparaiso, Ind., for plaintiffs.

Charles E. Hervas, Itasca, Ill., for City of Michigan City, Ind., Michael M. Bigda, Officer Hudson.

Steven C. Snyder, Michigan City, Ind., for all defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on the summary judgment motion of defendants City of Michigan City, Indiana ("the City"), Michael Bigda, Officer Hudson and four other unknown officers, pursuant to Fed. R. Civ. P. 56(c). The plaintiffs have filed a response. A telephonic hearing on the defendants' motion was held on April 4, 1988. Trial of this matter is scheduled to commence on May 2, 1988. Jurisdiction is vested in this court by 28 U.S.C. § 1343. For the reasons that follow, the court denies summary judgment with respect to the claim against the individual defendants based upon their search of the plaintiffs' automobile, but grants the defendants' summary judgment motion in all other respects.

I.

This suit under 42 U.S.C. § 1983 alleges a deprivation of the Fourth Amendment right to be secure against unreasonable searches and of Fourteenth Amendment rights to due process and equal protection of the laws.

Plaintiff Jon Woods, aged 17, alleges that on May 25, 1986 at approximately 10:30 p.m. he was driving within the city limits of Michigan City in a vehicle owned by plaintiff Connie Blakley and bearing Porter County, Indiana license plates. Officers Bigda and Hudson and four unknown fellow officers of the Michigan City police force stopped Mr. Woods for reckless driving. Officer Bigda handcuffed Mr. Woods and placed him in the back seat of Officer Hudson's squad car. The officers searched Mr. Woods' vehicle, including the trunk and glove box, and then allowed friends accompanying Mr. Woods to drive the vehicle to the residence of Mr. Woods' mother, Ms. Blakley.

Mr. Woods was taken to the Michigan City Jail and charged with reckless driving pursuant to IND. CODE 9–4–1–56.1. Pursuant to a bond schedule issued by LaPorte County Superior Court Judge Arthur Keppen, Mr. Woods was detained in the Michigan City Jail until bond was posted. Mr. Woods spent eight hours in jail before his bond was posted.

Mr. Woods[1] does not dispute that the officers had probable cause to stop him for speeding and reckless driving and arrest him. He contends that he was detained pending the posting of bond for an offense for which no bond may be required, and that the search of his vehicle violated his

---

1. Mr. Woods and Ms. Blakley are the plaintiffs in this action. Because all of the events giving rise to the suit were directed at Mr. Woods, the court will refer throughout this opinion to the plaintiffs' arguments as being those of Mr. Woods.

Fourth Amendment rights. The plaintiffs seek compensatory and punitive damages for these alleged constitutional violations.

The City and its officers raise six arguments in support of their summary judgment motion:

(1) Mr. Woods has shown no custom, practice or policy of the City sufficient to state a claim against the City;

(2) Mr. Woods was not arrested without probable cause or in violation of clearly established law (Mr. Woods concedes this point with respect to the arrest, but contends that his detention violated clearly established law);

(3) the search of Mr. Woods' vehicle did not violate his Fourth Amendment rights and involved no injury compensable under 42 U.S.C. § 1983;

(4) Mr. Woods' Fourteenth Amendment due process rights were not violated when he was incarcerated for approximately eight hours;

(5) Mr. Woods' right to equal protection of the laws was not violated; and

(6) Mr. Woods' pendent state claim should be dismissed for failure to serve statutory notice required by the Indiana Tort Claims Act.

The court will address the arguments in the order presented by the defendants.

## II.

A party seeking summary judgment must demonstrate that entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 841 F.2d 1347 (7th Cir.1988); *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donald v. Polk County*, 836 F.2d 376 (7th Cir.1988). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Anderson v. Univ-*

*ersity of Wisconsin*, 841 F.2d 737 (7th Cir., 1988).

When the parties do not dispute the factual basis of a motion for summary judgment, the reviewing court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force*, 804 F.2d 428 (7th Cir.1986).

When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States*, 803 F.2d 1421 (7th Cir.1986); *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed. 2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985). Any permissible reasonable inferences from the documentary evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A party need not try its case by affidavit, but it must set forth some facts from which the court can reasonably infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.*, 773 F.2d 130 (7th Cir.1985). The non-moving party must show that the disputed fact is material, that is, outcome-determinative under the applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Federal Savings & Loan Ass'n*, 806 F.2d 146 (7th Cir. 1986).

The defendants' summary judgment motion must be addressed with these standards in mind.

## III.

The court turns first to the claim against the City.

Mr. Woods was held pending bond pursuant to a bond schedule issued by LaPorte County Superior Court Judge Arthur Keppen. That bond schedule provides the springboard for each side's argument concerning the municipality's liability.

### A.

The City argues that Mr. Woods alleges only a single incident of misconduct, which is insufficient to support a claim against the City of Michigan City. The City argues that it has no relationship with Judge Keppen and exercises no control or input over the judge's conduct. The City argues that Mr. Woods has identified no City employee involved with or responsible for the judge's decision to impose a requirement of bond for reckless driving.

Mr. Woods argues that the City is liable under § 1983 due to the directive of Judge Keppen making reckless driving a bondable offense. He argues that the directive contravenes Indiana law, IND. CODE 9–4–1–131 [2], and Judge Keppen, as a judicial officer, is a policy-making official of a position sufficiently high to subject the City to liability. Because the county court or superior court judge is the final repository of powers as to the Michigan City Police Department in the interpretation and administration of IND. CODE 9–4–1–130.1, which defines traffic offenses that require bond, Judge Keppen's edict establishes the City's official policy.

### B.

Evaluation of this assertion of municipal liability through the actions of an official outside the City's governing channels requires re-examination of the principles governing municipal liability for actions by its officials under § 1983.

In *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), the Supreme Court held that, "Congress did not undertake to bring municipal corporations within the ambit of" § 1983. That holding was revisited in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1979), in which the Court held that local governments may be held responsible when their official policies cause their employees to violate another's constitutional rights even when the policies have not received formal approval through the bodies' official making channels. *Id.* at 691, 98 S.Ct. at 2036. The Court refused to recognize municipal liability under § 1983 solely on the basis of *respondeat superior.* "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

█ A single-decision taken by the highest officials responsible for setting policy in that area of the government's business can be attributed to the municipality for purposes of § 1983. *See Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (city council's revocation of entertainment license); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city manager's discharge of police chief authorized by city council). However, proof of a single incident of unconstitutional activity is insufficient to impose municipal liability unless there is proof that it was caused by an existing municipal policy attributable to a municipal policy-maker. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1984).

In *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the

---

**2. 9–4–1–131 Arrest; appearance in court; written promise to appear; nonresidents, security deposit, agreement, release from custody**

Sec. 131. (a) Whenever a person who is a resident of this state is arrested for any misdemeanor regulating the use and operation of motor vehicles, and the resident is not immediately taken to court as provided in section 130.1 of this chapter, the person shall be released from custody by the arresting officer upon signing a written promise to appear in the proper court at a time and date indicated on the promise. The resident shall be given a copy of the promise.

\* \* \* \* \* \*

IND.CODE 9–4–1–130, set forth in note 8 *infra,* sets forth the offenses for which bond is required.

Supreme Court determined that municipal liability attaches as a result of a single decision if the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. The Court looked to Ohio law, which provided that county police officers may require instructions from the county prosecutor in matters connected with their official duties. The county police officers were to serve capiases on two of Dr. Pembaur's employees at his clinic. Dr. Pembaur would not allow the county police officers to pass through the clinic door to reach the employees upon whom the officers were to serve the capiases. The sheriff's deputies, not knowing what to do, contacted the sheriff, who in turn contacted the county prosecutor, who advised them to go in and get the witnesses. They did so by chopping down a door. The *Pembaur* Court found that the county prosecutor was acting as the county's final decision-maker by ordering the deputy sheriffs to enter Dr. Pembaur's clinic; therefore, the county could be held liable under § 1983.[3]

■ Whether an official has final policy-making authority is a question of state law. Identification of policy-making officials is neither a question of federal law nor a question of fact in the usual sense: when a question arises as to who is a policy-maker a court "can be confident that state law (which may include valid local ordinances and regulations) will always direct the court to some official or body that has the responsibility for making or setting policy in any given area of a local government's business". *City of St. Louis v. Praprotnik,* — U.S. —, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

In sum, the Court has held that municipalities may be liable under § 1983 for constitutional injuries caused by their official custom or policy, *Monell,* 436 U.S. 658, 98 S.Ct. 2018, which cannot be proven by a single incident, *Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, unless the single incident amounts to a declaration of a policy-maker with final authority in that area of the City's business, *Pembaur,* 475 U.S. 469, 106 S.Ct. 1292, as determined by state law, which the court must determine as a matter of law. *Praprotnik,* 108 S.Ct. 915. Thus, the court must determine whether Judge Keppen is an official with final policy-making authority for the City of Michigan City.

C.

The parties agree that Judge Keppen, as a LaPorte Superior Court Judge, issued a bond schedule to the law enforcement officers within LaPorte County requiring bond for those arrested for reckless driving. It is also undisputed that this directive appears to contravene IND.CODE 9–4–1–131. The parties do not seem to dispute that IND.CODE 9–4–1–131 vests in certain persons, including Mr. Woods, a liberty interest entitled to protection under the Due Process Clause. Thus, Judge Keppen's directive caused Mr. Woods to be subjected to a deprivation of his constitutional rights by being detained until such time as bond was posted.[4]

*Praprotnik* requires the court to examine state law and identify the official within the municipality that was authorized to decide the matter of which the plaintiff complains. Examination of Indiana law leads the court to conclude that no City official was authorized to decide the matter of which Mr. Woods complains.

Mr. Woods argues that the setting of bond for traffic offense is the sort of thing

---

**3.** It is noteworthy that the City of Cincinnati had also been a named defendant in Dr. Pembaur's original complaint along with Hamilton County and the county prosecutor. City police officers had assisted the county sheriffs in breaking down the door at Dr. Pembaur's office. The Sixth Circuit had reversed the district court's dismissal of the City of Cincinnati, finding there was a city policy respecting the use of force in serving capiases as well as aiding county police, and remanded the case to determine whether Dr. Pembaur's injuries resulted from

the execution of that policy. *Pembaur,* 475 U.S. at 476 n. 3, 106 S.Ct. at 1296 n. 3. The Supreme Court considered only the county's liability through its prosecutor's acts; the Court was not asked to address the City's liability under § 1983.

**4.** The City and its officers argue that Mr. Woods' inability to post bond caused his lengthy detention. The court cannot agree. The bond schedule caused his detention; his inability to post bond only affected the length of that detention.

ordinarily done by a city court; because the State has created no city court for Michigan City and instead has vested such authority in a county court, Mr. Woods contends that the State has made the county judge the policy-making authority for the City. Mr. Woods submits the deposition testimony of Lt. Kulakowski stating that Mr. Woods was held because of Judge Keppen's directive that persons arrested for reckless driving must post bond. However, Mr. Woods has set forth no statute or ordinance that would connect the City with any decision made by Judge Keppen. *See City of St. Louis v. Praprotnik*, 108 S.Ct. 915.

■ Under Indiana statutes, a court may admit a defendant to bond and impose certain conditions to assure the defendant's appearance at any stage of the legal proceedings. IND.CODE 35–33–8–3. If no order fixing the amount of bail has been made, the sheriff must present the warrant to the judge of an appropriate court of criminal jurisdiction, who shall fix the amount of bail. IND.CODE 35–33–8–4(a). It is evident that a judge of a court of criminal jurisdiction is the official with final authority for fixing bail under Indiana law. Michigan City has no court with criminal jurisdiction.

■ The plaintiffs cite *Bigford v. Taylor*, 834 F.2d 1213 (5th Cir.1988), for the proposition that county court judges can possess policy-making authority in certain situations to attribute municipal liability to the county. However, the *Bigford* court looked to Texas state law and found their county court judge had executive, administrative and legislative responsibilities, such as presiding over the county's legislative body, preparing the county's budget and conducting elections. The court also noted

that the county judge was accountable to no one other than the county electorate for his conduct. Because the county court judge had virtually absolute control over these statutory duties, the county could be held liable for his decisions. The county judge's power and authority came from state statutes.

. In *Anela v. City of Wildwood*, 790 F.2d 1063 (3rd Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), a municipal court judge established a "Cash Bond Schedule" that was contrary to a New Jersey Supreme Court promulgated rule. The defendants were arrested and taken to jail for loud radio playing. Under the Rule, arrestees were to be issued a summons and released in lieu of continued detention after going through post arrest identification unless certain specified conditions foreclosed their release. The arrestees in *Anela* were detained overnight for the minor unindictable offense of playing their radio too loudly.

The *Anela* court held that the city's practice of following a bail schedule that ignored the a state rule constituted a policy for purposes of *Monell*. The practice was so permanent and well settled as to have a force of law. *Id.* at 1067. The issuance of a bail schedule did not excuse city officials from complying with state law. It was found that the City of Wildwood established a practice contrary to the New Jersey Supreme Court rule and therefore bore the responsibility for its actions for purposes of § 1983.

Unlike the plaintiffs in *Anela*, Mr. Woods and his mother do not argue, and have presented no evidence, that it was the custom or practice of the Michigan City police routinely to detain arrestees charged with reckless driving until bond was posted.[5] Instead, they argue that the single

---

5. The *Praprotnik* Court seems to have recognized, although in the context of a different concern, the continued permissibility of such arguments:

... whatever analysis is used to identify municipal policymakers, egregious attempts by local government to insulate themselves from liability for unconstitutional policies are precluded by a separate doctrine. Relying on the language of § 1983, the Court has long recognized that a plaintiff may be able to prove the

existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970). That principle, which has not been affected by *Monell* or subsequent cases, ensures that most deliberate municipal evasion of the Constitution will be sharply limited.

decision by Judge Keppen to require bond for reckless driving was a decision by an official with final policy-making authority sufficient to establish City policy. The *Anela* court made no attempt to arrive at liability by that method of analysis. Indeed, according to the dissent, the entire panel agreed "that, because the Municipal Judge is not a city employee, his promulgation of the bail schedule cannot be found to be a city policy or practice". 790 F.2d at 1070 (Becker, J., dissenting). Further, a municipal judge fixing a bond schedule for a city police force seems better suited as a municipal policy-maker than a county court judge setting policy followed by a city police force.

Under *Pembaur* and *Praprotnik*, state law must provide a link to establish that the official was responsible for making policy in that area of the city's business. Judge Keppen was the final policy-making authority to set bond schedules for the County of LaPorte. However, the court cannot take the leap urged by the plaintiffs and find that his final policy-making authority related to the City's business affairs.

The *Praprotnik* Court criticized the appellate court that attributed liability to the City of St. Louis for employing too broad a definition of municipal policy-makers. 108 S.Ct. at 928. The Court found that acquiescence in subordinates' decisions was not a delegation of the authority to make policy. In the case at bar, the police officers' acquiescence in the bond schedule is no indication that the City delegated to Judge Keppen the authority to make policy for bondable offenses for the citizens of Michigan City. Indeed, the plaintiffs have not shown the court that the City had any such authority to delegate.

The court's holding with respect to Mr. Woods' argument on this issue may be taken directly from *Praprotnik:* "The city cannot be held liable under § 1983 unless respondent proved the existence of an unconstitutional municipal policy. Respondent does not contend that anyone in city

108 S.Ct. at 925–926.

**6.** Mr. Woods has not argued that the City is liable for the officers' search of the car. The

government ever promulgated, or even articulated, such a policy." 108 S.Ct. at 926. For the above stated reasons, summary judgment as it relates to municipal liability is granted as a matter of law.[6]

## IV.

The individual defendants argue that qualified immunity protects them from liability for the arrest and subsequent eight hours' detention of Mr. Woods until bond was posted. Conceding the officers' good faith belief that probable cause existed to arrest him, Mr. Woods argues that despite Judge Keppen's directive, the police officers should have known that detaining him until bond was posted violated his clearly established statutory and constitutional rights.

A two-part analysis governs inquiry into a qualified immunity defense. The court must ask: (1) whether the alleged conduct amounts to a violation of constitutional rights; and (2) whether the constitutional standards were clearly established at the time of the alleged conduct. *Abel v. Miller*, 824 F.2d 1522, 1531 n. 11 (7th Cir. 1987); *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir.1986). The proper inquiry is whether the government officials violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Wrigley v. Greanias*, 842 F.2d 955 (7th Cir.1988). In *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 93 L.Ed.2d 523 (1987), the Supreme Court refined the contours of *Harlow* by stating that:

> ... the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would un-

detention presents the only issue of municipal liability.

derstand that what he is doing violates that right.

*Anderson,* 107 S.Ct. at 3039.

■ The officers concede that Mr. Woods' detention violated IND.CODE 9–4–1–131(a). Still, qualified immunity protects the officers from individual liability unless the detention violated clearly established rights—in other words, Mr. Woods' rights must have been so clearly defined that a reasonable officer would understand that detention pending bond violated those rights. The court cannot so find.

Reckless driving, the offense for which Mr. Woods was charged and detained awaiting bond, is a Class B misdemeanor under Indiana law. IND.CODE 9–4–1–56.-1.[7] An Indiana resident arrested for a non-felony traffic offense is to be released from custody by the officer upon signing a written promise to appear, IND.CODE 9–4–1–131(a), unless IND.CODE 9–4–1–130[8] requires that the person be taken immediately to court. Reckless driving is not among the offenses for which persons are to be taken immediately to court. Thus, Mr. Woods, as a resident of Indiana stopped for a Class B misdemeanor traffic offense, should have been released upon signing a written promise to appear. However, due to Judge Keppen's inclusion of reckless driving on the bond schedule, the officers detained Mr. Woods until bond was posted eight hours later. Mr. Woods makes no assertion that his incarceration involved any form of mistreatment or improper segregation, but rather takes issue with being detained at all and argues that his detention was a form of pretrial punishment.

Applying the objective standard of *Harlow v. Fitzgerald,* as refined in *Anderson v. Creighton,* the court cannot find that the officers would have known, in light of the bond schedule issued pursuant to state law by a state judge in regard to the offense of reckless driving, that their detention of Mr. Woods violated a right clearly protected by an Indiana statute.[9] Accordingly, as a matter of law, the officers are entitled to the shield of qualified immunity. The individual defendants' motion for summary judgment as it relates to the issues of arrest and subsequent detention must be granted.

## V.

■ The officers admit that Mr. Woods' vehicle, including the trunk and glove box, was searched, but claim that the search

---

7. **9–4–1–56.1 Reckless driving; offense**

Sec. 56.1. A person operating a vehicle who recklessly:

(1) drives at such an unreasonably high rate of speed, or at such an unreasonably low rate of speed, under the circumstances, as to endanger the safety or the property of others, or as to block the proper flow of traffic;

(2) passes another vehicle from the rear while on a slope or on a curve where vision is obstructed for a distance of less than five hundred (500) feet ahead;

(3) drives in and out of a line of traffic, except as otherwise permitted; or

(4) speeds up or refuses to give one-half (½) of the roadway to a driver overtaking and desiring to pass;

commits a Class B misdemeanor; and, if the offense results in damages to the property of another person, the court shall recommend the suspension of the current driving license of the person for a fixed period of not less than thirty (30) days nor more than one (1) year.

8. **9–4–1–130 Arrest; immediate appearance before court**

Sec. 130. Whenever a person is arrested for a misdemeanor or infraction under this chapter, the arrested person shall be immediately taken before a court within the county in which the offense charged is alleged to have been committed and that has jurisdiction of the offense and is nearest or most accessible to the place where the arrest is made, in any of the following cases:

(1) When the person demands an immediate appearance before a court.

(2) When the person is charged with an offense causing or contributing to an accident resulting in injury or death to any person.

(4) When the person is charged with violating IC 9–4–1–54(b).

(5) When the person is charged with failure to stop in the event of an accident causing death, personal injuries, or damage to property.

(6) When the person refuses to give his written promise to appear in court.

(Note: Clause (3) was deleted by 1978 amendment).

9. The court notes that in *Anela v. City of Wildwood,* 790 F.2d 1063 (3rd Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), in which the municipality was held liable, the district court had found the individual officers entitled to qualified immunity; that ruling was not appealed.

was permissible as an inventory search. According to the offices, when Mr. Woods was arrested he was informed that his car would be towed and he would have to pay $50.00 in towing charges. Mr. Woods requested that one of his friends be allowed to drive the car to his mother's home. The officers argue that despite the release of Mr. Woods' vehicle, they were justified in inventorying the car's contents to assure that it contained no valuable articles or other property before releasing it to a third party.

Mr. Woods argues that the inventory search contravened the Fourth Amendment because the officers did not impound the car. The search was conducted without Mr. Woods' consent, outside the scope of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *Carroll v. U.S.*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), because the officers had no probable cause to believe that the vehicle contained contraband.

Inventory searches are now a well-defined exception to the warrant requirements of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 367–376, 96 S.Ct. 3092, 3096–3101, 49 L.Ed.2d 1000 (1976). However, this exception to the Fourth Amendment's warrant requirement assumes an impounded vehicle in police custody. *Bertine*, 107 S.Ct. at 742.

The *Bertine* Court recognized that instead of impounding Mr. Bertine's vehicle, the police officers could have allowed Mr. Bertine to make alternative arrangements. The Court, citing to *Lafayette*, reiterated that "[t]he real question is not what could have been achieved, but whether the Fourth Amendment requires such steps ... The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means." *Bertine*, 107 S.Ct. at 742; *Lafayette*, 462 U.S. at 647, 103 S.Ct. at 2610. While the *Bertine* Court was called upon to evaluate the effect of

available alternate procedures on the inventory search exception to the warrant requirement, the search of Mr. Woods' car presents a different issue: whether the governmental interest supporting an inventory search remains when the police officers allow the arrestee to make alternate arrangements to have the vehicle driven away.

Based on the present record, two reasons lead the court to conclude that the inventory search exception does not support a claim of qualified immunity for these officers:

1. Inventory searches must be conducted pursuant to standardized police procedure. The defendants have offered no evidence to indicate that Michigan City policeman routinely inventory the contents of a vehicle when the officers have exercised their discretion to allow a third-party to take control over property for safekeeping purposes alternate to impoundment.

2. Officer Hudson's deposition testimony indicates that the officers made no list of items found in the car. If no inventory was made, the court cannot conclude as a matter of law that the search was permissible as an inventory search.

Accordingly, summary judgment on this claim must be denied.

## VI.

The City and its officers argue that Mr. Woods' Fourteenth Amendment due process rights were not violated when he was incarcerated for approximately eight hours. Because the court has concluded that the detention has not been shown to have resulted from City policy, entitling the City to judgment on the § 1983 claim, *see* Part III, *infra*, that the officers are entitled to judgment on the § 1983 claim due to qualified immunity, *see* Part IV *infra*, and that no state tort claim may be maintained, *see* Part VIII, *supra*, the court need not address this argument.

## VII.

■ Mr. Woods alleges that the officers singled him out for more severe treatment because he was from another county, as evidenced by his license plate. The officers argue that Mr. Woods has not alleged that he is a member of an invidious or suspect class and, furthermore, Mr. Woods' guilty plea undercuts his argument that he was singled out for more disparaging treatment.

The Equal Protection Clause "protects against intentional discrimination by the state against persons similarly situated". *Muckway v. Craft*, 789 F.2d 517 (7th Cir. 1986); *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir.1982); *Shango v. Jurich*, 681 F.2d 1091, 1103 (7th Cir.1982). "The grievance of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action." *Shango*, 681 F.2d at 1104; *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir.1970). "Discriminatory purpose implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing adverse effects on the identifiable group." *Shango*, 681 F.2d at 1104.

Mr. Woods has come forth with no evidence to warrant a finding that he was singled out for disparate treatment apart from the prayer for relief in the complaint. A party opposing a summary judgment motion cannot rest on mere allegations in the pleadings. *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

Accordingly, the defendants are entitled to judgment as a matter of law on this issue.

## VIII.

The City asserts that summary judgment should be granted on Mr. Woods' pendent state claims against it for failure to follow certain procedures as allegedly outlined in the Indiana statutes because the plaintiffs filed no notice of intent to sue pursuant to the Indiana Tort Claims Act. IND.CODE 34–4–16.5–7 *et seq*. The complaint, which addresses the police officers' conduct in searching the vehicle and in detaining Mr. Woods for eight hours in violation of a state law, alleges a tort by the City.

■ The Indiana Tort Claims Act allows suit against a political subdivision of the State only if notice of the claim is filed with the governing body of that political subdivision within one hundred eighty days after the loss occurs. *Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302 (Ind.App.1979); *Gonser v. Board of Commissioners*, 177 Ind.App. 74, 378 N.E.2d 425 (Ind.App.1978). The incidents giving rise to this action occurred on May 25 and 26, 1986. Therefore, the plaintiffs had one hundred eighty days from those dates to serve written notice on the City for the alleged actions of the Michigan City police officers. The plaintiffs have come forward with no evidence that such notice was served on the City pursuant to IND.CODE 34–4–16.5–7 *et seq*. Accordingly, the plaintiffs can bring no state claim for violations of state law against the City of Michigan City. The City is entitled to summary judgment as to the plaintiffs' pendant state law claims against them.

## IX. CONCLUSION

The court now DENIES the defendants' summary judgment motion with respect to the claim against the individual defendants based upon their search of the plaintiffs' automobile. The court GRANTS the defendants' summary judgment motion in all other respects.

SO ORDERED.