Dimitrios GARNELIS and Laura Garnelis, Appellants–Plaintiffs,

v.

INDIANA STATE DEPARTMENT OF HEALTH, Appellee–Defendant.

No. 49A04–0308–CV–429.

Court of Appeals of Indiana.

April 20, 2004.

Barbara J. Germano, Findling Garau Germano & Pennington, Indianapolis, IN, Attorney for Appellants.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Dimitrios Garnelis ("Dimitrios") and Laura Garnelis (collectively, "the Garnelises") appeal the trial court's grant of summary judgment to the Indiana State Department of Health ("the Health Department") and denial of summary judgment on their cross-motion for summary judgment. The issue we find dispositive is whether the Garnelises complied with the requirement of the Tort Claims Act to give notice of their claim within 270 days after their loss occurred.[1] We reverse and remand.

The relevant facts designated by the parties follow. On September 13, 1991, Dimitrios had his blood drawn for HIV testing at the Bell Flower Clinic, who then forwarded the blood sample to the Health Department for analysis. On September 27, 1991, Susan Fay of the Bell Flower Clinic sent a letter to Dimitrios and informed him that he was HIV positive and that the test was confirmed by additional testing. Dimitrios was told that his diagnosis was "definitive" because it had been confirmed by the additional testing, and he was not instructed that he needed to undergo repeat testing. Appellant's Appendix at 53. Dimitrios was given educational information regarding his test result and instructed to receive follow-up treatment with an infectious disease specialist. Thereafter, Dimitrios consulted infectious disease specialists, who monitored Dimitrios's clinical status but who did not send him for repeat testing.

---

1. The Garnelises also argue that the trial court's interpretation of the notice provision of the Indiana Tort Claims Act, Ind.Code § 34–13–3–6(a), is unconstitutional as applied. Because we hold that the trial court erred by finding the Garnelises' tort claim notice to be untimely and by granting summary judgment to the Health Department, *see* *infra*, we need not address this constitutional issue. *See, e.g., Board of Trustees of Indiana Pub. Employees' Ret. Fund v. Grannan*, 578 N.E.2d 371, 376 (Ind.Ct.App.1991) (stating that we do not reach constitutional claims when a case can be properly disposed of on non-constitutional grounds), *trans. denied*.

In July 1999, Dimitrios, who was in Greece caring for his terminally ill mother, sought to have his clinical status evaluated to determine if he needed treatment while in Greece. Dimitrios was informed that in order to receive treatment in Greece he would first need to take an HIV test in Greece. On July 5, 1999, Dimitrios underwent HIV testing in Greece and learned that the test results were negative for HIV. Subsequent testing in Greece and the United States both revealed Dimitrios's test results were negative for HIV.

On October 7, 1999, the Garnelises served a tort claim notice on the Health Department. The Garnelises then filed a complaint against, among others, the Health Department, alleging that the Health Department was "careless and negligent" in: (1) "the performance of, the analysis of, and/or the reporting of Dimitrios Garnelis's HIV test[;]" and (2) "failing to order retesting of Dimitrios Garnelis to verify the positive result of his HIV test." *Id.* at 9–10. The Health Department filed a motion for summary judgment on the issue of whether the Garnelises' tort claim notice was timely filed, and the Garnelises filed a cross-motion for summary judgment on the same issue. The trial court granted the Health Department's motion and denied the Garnelises' cross-motion as follows:

> Comes now Gary L. Miller, Judge of the Marion Superior Court, Civil Division, Room 5, and having reviewed the pleadings and the evidence and having heard the arguments of counsel on the Cross Motions for Summary Judgment, the Court now finds that no genuine issues of material fact exist and the Motion for Summary Judgment filed by the Defendant, Indiana State Department of Health, should be **GRANTED** and the Motion for Summary Judgment filed by the Plaintiff[s, the Garnelises,] should be **DENIED**. There being no just reason

for delay, the Court enters judgment for the Defendant, Indiana State Department of Health.

*Id.* at 7.

The sole issue is whether the Garnelises complied with the requirement of the Tort Claims Act to give notice of their claim within 270 days after their loss occurred. The trial court determined that the Garnelises' tort claim notice to the Health Department was not timely under the Tort Claims Act and entered its summary judgment order in favor of the Health Department and against the Garnelises. *See* Ind. Code § 34–13–3–6 (1998). The Garnelises argue that the trial court erred by determining that the Garnelises' tort claim notice was untimely under the Tort Claims Act.

Our standard of review for the grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). The standard of review is not altered by cross-motions for summary judgment on the same issues. *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Mangold*, 756 N.E.2d at 973. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.* at 974.

The Indiana General Assembly enacted the Tort Claims Act in order to

establish procedures for cases involving prosecution of tort claims against governmental entities. *State v. Willits,* 773 N.E.2d 808, 814 (Ind.2002). The Tort Claims Act provides that a claim against the State is "barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs." I.C. § 34–13–3–6(a).[2] Loss is defined as "injury to or death of a person or damage to property." Ind.Code § 34–6–2–75(a) (1998). "The purpose of the notice requirement [of the Tort Claims Act] is to inform state officials with reasonable certainty of the accident or incident and surrounding circumstances and to advise of the injured party's intent to assert a tort claim so that the state may investigate, determine its possible liability, and prepare a defense to the claim." *Indiana Dep't of Transp. v. Shelly & Sands, Inc.,* 756 N.E.2d 1063, 1076 (Ind.Ct.App.2001), *trans. denied.* Because the notice provisions of the Tort Claims Act are in derogation of the common law, they must be construed against limitations on a claimant's access to the courts. *Polick v. Indiana Dep't of Highways,* 668 N.E.2d 682, 685 (Ind.1996).

Both the Garnelises and the Health Department agree that the Garnelises provided their tort claim notice on October 7, 1999. The parties, however, disagree regarding the date that triggered the Garnelises' duty to provide notice of their tort claim within 270 days under the statute. The Health Department argues that the date that triggered the 270–day time limitation for the Garnelises' tort claim notice was September 27, 1991, the date that Dimitrios was erroneously diagnosed as being HIV positive. Thus, the State argues that the Garnelises' tort claim notice filed on October 7, 1999, was untimely because it was more than 270 days after their loss occurred. The Garnelises argue that "[a] plaintiff can not be expected to provide a governmental entity with the facts and circumstances of his tort claim before he has any knowledge of those facts and circumstances and before his tort claim even comes into existence." Appellant's Brief at 13. The Garnelises argue that the date that triggered the 270–day time limitation for notice of their tort claim was the date on which their cause of action accrued. The Garnelises argue that under the facts of this case, their cause of action accrued on July 5, 1999, the date they discovered that Dimitrios was not HIV positive, and that before that date Dimitrios did not know or have reason to know that he had been given a false diagnosis. To support their argument, the Garnelises rely on *City of Hobart Sewage Works v. McCullough,* 656 N.E.2d 1185 (Ind.Ct.App. 1995), *disapproved of on other grounds by Kantz v. Elkhart County Highway Dep't,* 701 N.E.2d 608 (Ind.Ct.App.1998), *trans. denied* and *Livingston v. Consolidated City of Indianapolis,* 398 N.E.2d 1302 (Ind.Ct.App.1979).

We agree that *City of Hobart* and *Livingston* are instructive. In *City of Hobart,* the plaintiffs bought a house in September 1979, lived in the house for seven years, and later leased it. *City of Hobart,* 656 N.E.2d at 1187. In June 1993, the tenants told the plaintiffs that the sewer system had backed up. *Id.* Before the plaintiffs bought the house, they were informed that the city sewer company serviced the property. *Id.* In addition, from 1979 to 1993, the city billed the plaintiffs for monthly use of the sewer system. *Id.* On June 15,

**2.** A claim against a political subdivision is barred unless notice is filed with governing body of that political subdivision and the Indiana political subdivision risk management within 180 days after the loss occurs. Ind.Code § 34–13–3–8(a) (1998).

1993, while the plaintiffs were attempting to fix the sewage problem, they discovered that their house had never been connected to the city sewer system and that the city had improperly charged them for sewer service for the prior fourteen years. *Id.* at 1188. On October 13, 1993, the plaintiffs filed a complaint against the city in small claims court alleging that the city had negligently billed them for sewer services for fourteen years. *Id.* The trial court entered judgment in favor of the plaintiffs, and the city appealed, arguing in part that the plaintiffs' claim was barred by their failure to comply with the statute of limitations and with the Tort Claims Act. *Id.* at 1188–1189.

In regard to compliance with the statute of limitations, we held that the statute of limitations did not begin to run and the cause of action did not accrue until the plaintiffs "knew or in the exercise of ordinary diligence could have discovered that an injury had been sustained as a result of the tortious conduct of another." *Id.* at 1189. After determining that the plaintiffs did not know or did not have reason to know that their house was not connected to the city sewer line until June 15, 1993, we held that the plaintiffs' claim filed on October 13, 1993, was within the two-year statute of limitations. *Id.* at 1189–1190.

In regard to the Tort Claims Act, we held that "[s]ubstantial compliance with the provisions of the [tort claim] notice statute will suffice when the purpose of the statute has been satisfied." *Id.* at 1189. We determined that the plaintiffs' small claims complaint, which contained the names of the parties involved, a statement of the nature of the claim, and the amount of damages sought, complied with content

requirements of the Tort Claims Act.[3] *Id.* When determining that the plaintiffs' small claims complaint complied with the Tort Claims Act, we noted that plaintiffs' complaint was filed 120 days after the plaintiffs first discovered that their property was not connected to the city sewer system. *Id.* Thus, implicit in this court's holding was that the date that the plaintiffs' cause of action accrued, i.e., the date that they learned that their house was not connected to the city sewer system, was the date that triggered the 180–day statutory time limitation for filing a tort claim notice against the city.

In *Livingston*, the plaintiff was driving her car when she was stopped by police officers on January 18, 1975. *Livingston*, 398 N.E.2d at 1303. As a result of the circumstances surrounding the stop, the police charged the plaintiff with disorderly conduct and being in violation of an automobile anti-noise ordinance. *Id.* On August 11, 1975, the plaintiff was acquitted of both charges. *Id.* On November 22, 1975, the plaintiff filed a tort claim notice with the city and the State. *Id.* On January 18, 1977, the plaintiff filed suit against the city and the State for false arrest, false imprisonment, assault and battery, and malicious prosecution. *Id.* The city and the State filed motions to dismiss, arguing that the plaintiff's tort claim notice was untimely. *Id.* 1303–1304. The trial court granted the motions to dismiss, and the plaintiff appealed. *Id.* at 1303.

When determining whether the plaintiff's tort claim notice was timely, we first determined the date on which each of the plaintiff's causes of action accrued. *Id.* at 1303–1304. We determined that the plaintiff's causes of action for false arrest, false

---

**3.** In *Kantz*, we disapproved of this part of the holding to the extent that it could be construed to permit a person to file a lawsuit without first giving the governmental entity ninety days in which to approve or deny the claim. *Kantz*, 701 N.E.2d at 616 n. 9. That, however, is not at issue in this case.

imprisonment, and assault and battery accrued on January 18, 1975, which was the date that the plaintiff was arrested and charged. *Id.* at 1303. Therefore, we held that the plaintiff's tort claim notice for these causes of action, which was sent on November 22, 1975, was untimely because it was not sent within the 180 day statutory time limitation. *Id.* at 1303–1304. We, however, held that the plaintiff's tort claim notice regarding the malicious prosecution cause of action was timely. We determined that the plaintiff's cause of action for malicious prosecution did not accrue until August 11, 1975, which was the date that the plaintiff was acquitted and judgment was entered. *Id.* at 1304. Thus, the plaintiff's tort claim notice for this cause of action, which was sent on November 22, 1975, was timely because it was sent within the statutory time limit. *Id.* at 1304. Therefore, the date that the cause of action accrued was central in our determination of whether the tort claim notice was timely filed.

Our supreme court has also interpreted the notice provision of the Tort Claims Act in a similar manner. In *City of Lake Station v. State ex rel. Moore Real Estate, Inc.,* 558 N.E.2d 824 (Ind.1990), the plaintiff filed a building permit with the city requesting to build a single family dwelling. On April 11, 1985, the city building commission had the plaintiff come to its meeting to discuss a dispute regarding whether the plaintiff's proposed building met the minimum square footage requirement. *Id.* at 826. At the close of the meeting, the city did not take any action on the plaintiff's building permit but instead decided to have the city attorney research the square footage issue. *Id.* After the April 11th meeting, the plaintiff's attorney contacted the city attorney sever-

al times. *Id.* In October 1985, the plaintiff's attorney spoke with the city attorney who indicated that the plaintiff's building permit application would be denied because the building did not meet the square footage requirements in the city's ordinance. *Id.* On October 12, 1985, the plaintiff filed a tort claim notice with the city. *Id.*

After the plaintiff filed a complaint for mandate and damages against the city, the city moved to dismiss the complaint on the grounds that the plaintiff's tort claim notice was untimely. *Id.* The trial court denied the city's motion, and the city appealed. *Id.* We held that the trial court erred by denying the city's motion to dismiss because the plaintiff's tort claim notice was untimely. *Id.* Our supreme court granted transfer and held that the plaintiff's tort claim notice was timely filed.[4] *Id.* at 826–828.

Our supreme court disagreed with the city's argument that the date the plaintiff's loss occurred under the Tort Claims Act was in April 1985 when the city building commission tabled the decision on the plaintiff's building permit application, and our supreme court stated that date "was surely not a date upon which a 'loss occurred' so as to set running the 180–day period for filing a tort claim notice." *Id.* at 827. Our supreme court stated that accepting the city's argument "would permit government bodies to immunize themselves from tort claims simply by delaying a decision until the 180–day notice period expires" and that the "notice provision … should not provide a method for evading responsibility through inaction." *Id.* Instead, our supreme court determined that the plaintiff's loss did not occur any earlier than the date in October 1985 when the plaintiff's attorney first learned that the

---

4. Our supreme court interpreted only the notice provision of the Tort Claims Act and did not determine if the plaintiff suffered a compensable loss. *Id.* at 827–828.

city attorney would advise the city building commission that the plaintiff's proposed dwelling did not meet the city's square footage requirements and held that the plaintiff's October 12, 1985, tort claim notice was timely because it was filed within the statutory time limit after the "loss occurred." *Id.* at 827–828. In determining the timeliness of the tort claim notice, our supreme court stated that the date of loss is not always definite or easily determined. *Id.* at 827.

After reviewing these cases interpreting the notice provision of the Tort Claims Act, we reject the Health Department's argument that September 27, 1991, the date on which Dimitrios was erroneously diagnosed as being HIV positive, was the date that the Garnelises' loss occurred so as to trigger the 270–day time limitation for the filing of the Garnelises' tort claim notice. The date that triggered the 270–day time limitation for the Garnelises to send their tort claim notice was the date on which the Garnelises' cause of action accrued. *See City of Hobart,* 656 N.E.2d at 1189; *Livingston,* 398 N.E.2d at 1303–1304. A cause of action for a personal injury claim accrues and the statute of limitation begins to run "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind. 1992).

Here, in September 1991, after the Health Department analyzed Dimitrios's blood sample, the Bell Flower Clinic informed Dimitrios that he was HIV positive. Dimitrios was told that his diagnosis was "definitive," and he was not instructed that he needed to undergo repeat testing. Appellant's Appendix at 53. From September 1991 to July 1999, Dimitrios consulted infectious disease specialists, who monitored Dimitrios's clinical status but who did not do repeat testing. While Dimitrios was in Greece in July 1999, he was informed that he would need to have an additional HIV test before he could receive treatment from Greek doctors. On July 5, 1999, Dimitrios underwent HIV testing in Greece and learned that his test results were negative for HIV. Subsequent testing in Greece and the United States both revealed Dimitrios's test results were negative for HIV. On October 7, 1999, the Garnelises served a tort claim notice to the Health Department, and they later filed a complaint against the Health Department, alleging that the Health Department was "careless and negligent" in: (1) "the performance of, the analysis of, and/or the reporting of Dimitrios Garnelis's HIV test[;]" and (2) "failing to order retesting of Dimitrios Garnelis to verify the positive result of his HIV test." *Id.* at 9–10, 62–63.

The undisputed facts of this case lead us to conclude that Dimitrios did not know or, in the exercise of ordinary diligence, could not have discovered the alleged negligence and resulting injury until July 5, 1999. Similar to *City of Hobart,* where the homeowner plaintiffs' loss occurred so as to trigger the statutory period to file a tort claim notice on the date they discovered that their house was not connected to the city sewer system, not on the date that they were first erroneously charged for sewer service, the Garnelises' loss occurred so as to trigger the statutory period to file a tort claim notice on the date when Dimitrios discovered that he was not HIV positive, not the date that the Health Department erroneously diagnosed him as being HIV positive. Therefore, July 5, 1999, was the date that the Garnelises' cause of action accrued and was the date upon which their loss occurred so as to trigger the 270–day time period for filing their tort claim notice. *See, e.g., City of*

*Hobart,* 656 N.E.2d at 1189; *Livingston,* 398 N.E.2d at 1303–1304. Accordingly, we conclude that the Garnelises' tort claim notice, filed on October 7, 1999, was timely. Thus, the trial court erred by granting summary judgment to the Health Department.

For the foregoing reasons, we reverse the trial court's grant of the Health Department's motion for summary judgment and denial of the Garnelises' cross-motion for summary judgment, and we remand to the trial court for proceedings consistent with this opinion.

Reversed and remanded.

MATHIAS, J. and VAIDIK, J., concur.